IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CONSTANCE ROLLAND,

    Plaintiff,

      v.

COBB COUNTY SCHOOL
DISTRICT,

    Defendant.

CIVIL ACTION FILE
NO. 1:10-CV-2173-TWT

## OPINION AND ORDER

The Plaintiff in this case was a school bus driver for the Cobb County School District who claims that she was terminated for the statements she made following a bus accident. However, the Plaintiff is unable to show that the school board violated her rights explicitly or pursuant to a custom or policy of rubber stamping subordinate decisions.

## I. Introduction

Defendant Cobb County School District ("CCSD") is the body that provides public education to the children of Cobb County, Georgia. CCSD utilizes 1,100 buses and employs 800 drivers to provide the daily transportation needs of its students. The Plaintiff, Constance Rolland, was employed as a special needs bus driver for the

District from November 20, 1995, until her termination on November 2, 2009.  (See Pl.'s Statement of Facts in Opp'n to Def.'s Mot. for Summ. J., ¶¶ 1-3, 6).

The transportation department within CCSD drew public attention during the time period at issue.  A Cobb County grand jury was convened in January 2010 to investigate allegations by bus drivers and mechanics concerning mismanagement, management through fear, and safety infractions.  (See Abraham Dep. Ex. 10, at 9).[1]  The grand jury found that the District's bus fleet was extremely old and that there was no plan for obtaining new buses.  It further found that bus maintenance records were in shambles, that there were no written procedures for mechanics, and that eight of the fourteen lifts used in bus maintenance were unsafe.  (Id. at 9-12).  The grand jury's investigation noted that "the drivers and mechanics work in an environment of intimidation and 'virtual fear' of losing their jobs – it is palpable and we heard and saw it time and again."  (Id. at 14).  The grand jury stated that transportation employees "have no faith in that chain of command."  (Id.)  The investigation concluded by calling for "[a]n audit of Human Resources practice of hiring and firing both Fleet Maintenance Mechanics and Bus Drivers to assure fair and equal treatment.

---

[1] The Defendant objects to the admissibility of the grand jury report and to the admissibility of various newspaper articles that the Plaintiff cites in her statement of material facts.  Because the Court ultimately concludes that the Plaintiff cannot establish municipal liability even with this evidence, the Court need not resolve the Defendant's objections.  Of course, the Plaintiff had been fired months before the grand jury was convened.

In addition, an audit should be performed to assure all requirements of the [employee handbook] concerning employee relations, employee evaluations, notifications of deficient performance, hiring and firing practices, etc. are strictly followed." (<u>Id.</u>)

Plaintiff Constance Rolland was a member of the Transport Workers Union, Local 249 during her 14-year employment with the CCSD.  Rolland contends she had a reputation of speaking at cluster meetings and that her supervisor, Robin Banks, testified that Rolland liked "to get things riled up" at the meetings.  On September 28, 2009, Rolland was transporting special needs students home from school when she ran off the road and hit a fence and a tree.  At the scene of the accident, she told a police officer that the brakes on her CCSD bus failed and caused the  accident.  Bystanders may have heard her statement.  The bus had over 200,000 miles on its odometer and was normally used as a spare bus.  The bus had previously had problems with its brakes.  The police officer responding to the accident did not cite Rolland and the police report stated that the driver's brakes had failed.  The Defendant contends that tests conducted on the brakes before and after the accident belie Rolland's assertion that the brakes failed.  (<u>See</u> Pl.'s Statement of Facts in Opp'n to Def's. Mot. for Summ. J., ¶ 218; 222; 225; 231-43).

The story of the accident was covered by the Associated Press, the <u>Atlanta Journal-Constitution</u>, and the <u>Marietta Daily Journal</u>, as well as three local television

stations.  The coverage reported Rolland's statement on the cause of the accident.
Rolland's supervisor later told her that her post-accident statement had been leaked
to the press and that Rolland should be careful when making statements.  Rolland was
not aware members of the press were at the scene of the accident.  She denies talking
with the news media.  Rolland was suspended from work without pay following the
incident based on management's conclusion that the accident was preventable.
CCSD's report of the crash stated that Rolland "MISJUDGED CLEARANCE –
TRACKING DIFFERENCE – struck hazard as a result of rear wheels not following
front wheels." (Id. at ¶¶ 244-59).

Rolland was terminated on November 2, 2009.  CCSD cited the September 28,
2009, preventable accident as one basis for termination.  CCSD also cited Rolland's
failure to properly report an incident on September 25, 2009, in which she hit a tree
branch with the side mirror of her bus.  Rolland contends she did submit the proper
report following the accident.  Rolland further contends she was not given the right
to appeal CCSD's investigation.  The Defendant contends that  Rolland was also
terminated for driving with a handheld electronic device on the September 25, based
on the District's account of the incident which was based on a video recorder that
Rolland contends CCSD erased.  Rolland argues that the progressive discipline policy
did not call for her termination following her record and that other bus drivers were

not terminated with the same record of infractions.  The Department of Labor found that the September 28, 2009, accident was not Rolland's fault.  (Id. at ¶¶ 260-289).

The CCSD Board of Education (the "Board") must approve the termination of any bus driver.  (Finlayson Dep. at 153).  When it receives a recommendation to terminate an employee, the Board holds a closed-door "executive session" with the Board members, the superintendent, the chief human resources officer, and the District's attorney.  (Dunnigan Dep. at 55-58).  At the meeting, each Board member would receive a report generated by human resources listing the reasons why human resources felt the employee should be terminated.  (Id. at 50-53).  During the meeting, the chief human resources officer would walk the Board through the human resources report and discuss any questions the Board had, and the Board would often engage in a discussion about the recommendation.  (Bartlett Dep. at 33-34).  When the Board approved the recommendation to terminate the Plaintiff in this case, it was comprised of John Abraham (the chairman), David Banks, Alison Bartlett, Holli Cash, John Crooks, Lynnda Crowder-Eagle, and David Morgan.

The Plaintiff contends she was impermissibly terminated for exercising her First Amendment rights.  She seeks to recover from CCSD under 42 U.S.C. § 1983 for violations of her First Amendment rights.  The Defendant has moved for summary judgment, arguing that the Plaintiff cannot establish municipal liability and that the

Plaintiff has not shown that she engaged in protected conduct.

## II.  Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  Discussion

### A.    CCSD's Liability Under Monell

The Defendant argues that the Plaintiff is unable to hold CCSD liable under the standard set forth in Monell v. Department of Social Services, 436 U.S. 658 (1978). "[M]unicipalities may not be held liable for constitutional deprivations on the theory of respondeat superior."  Doe v. School Board of Broward County, Florida, 604 F.3d 1248, 1263 (11th Cir. 2010).  "A municipality may be held liable 'only if such

constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law.'" Id. (quoting Denno v. School Board of Volusia County, Fla., 218 F.3d 1267, 1276 (11th Cir. 2000)). "In addition to identifying conduct attributable to the municipality, a plaintiff alleging municipal liability under § 1983 must show that 'the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with deliberate indifference to its known or obvious consequences.'" Id. (quoting Davis v. DeKalb County Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000)). Further, "Monell's policy or custom requirement [] preclude[s] § 1983 liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion." Id. at 1264 (quoting Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997)).

"Determining the persons or bodies that have final policymaking authority for the defendant is a matter of state law." Id. at 1264. The parties agree that, under Georgia law, the CCSD Board holds final policymaking authority for the CCSD. The Plaintiff contends that her termination was the result of: (1) a pervasive custom or practice by which the Board failed to provide meaningful review of termination

recommendations which allowed CCSD to develop a custom and practice of unconstitutional retaliation leading to the Plaintiff's termination; and (2) the actions of a final policymaker, because the Board, as final policymaker, approved the recommendation to terminate the Plaintiff.  (See Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 27).

The Defendant argues that the Board provides a sufficient level of review of termination recommendations such that there is not a custom or practice within CCSD of rubber stamping termination recommendations.  Therefore, any retaliatory motivation of subordinate employees, such as Transportation Director Rick Grisham, is not attributed to the District.  The Defendant further argues that the Plaintiff has not shown any evidence of a policy or custom which could lead to municipal liability and that the Plaintiff must therefore establish that the Board sanctioned the violation of the Plaintiff's rights, which the Plaintiff cannot do.

The Plaintiff is unable to show that the Board had a custom or policy of rubber stamping termination recommendations.  "A municipality's failure to correct the constitutionally offensive actions of its [transportation] department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the" offensive actions.  Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987).  Here, the evidence shows that the Board did not

tacitly authorize and did not display indifference to termination decisions generally or to the concern that employees were being retaliated against.  Instead, the evidence indicates that the Board was aware of retaliation concerns and addressed those concerns.

While Board member Crowder-Eagle testified that she considered it unethical for the Board to independently investigate personnel recommendations from the Superintendent, she also stated that the Board could vote against the Superintendent's decision and that she had personally not supported a recommendation in the past. (Crowder-Eagle Dep. at 58-59).  Crowder-Eagle further stated that job performance was routinely discussed when the Board reviewed termination recommendations.  (Id. at 71).  Similarly, Board member John Abraham specifically recalls discussing whether termination decisions were retaliations for speaking out and sought reassurances from HR that the termination recommendations were not based on reprisals for public speaking.  (See Abraham Dep. at 39-40).  Although Abraham and the Board did not conduct their own investigation, Abraham's testimony supports the conclusion that the Board was concerned about retaliatory terminations.  (See Abraham Dep. at 40-41 (noting that the Board had concerns about retaliation); id. at 42 ("There have been a number of cases I can recall … a couple of people that I wanted clarification, wait a minute, the person just said this and you're going to fire

this person? … So.  We would look at these very carefully for the most part. Everybody would.").  Indeed, Abraham testified that he "remember[ed] the issue in general of retaliation… and [] brought that to the superintendent to address."  (Id. at 53).

Likewise, the fact that Board member Alison Bartlett admits that she did not have a way to learn the motivation behind termination recommendations does not mean the Board merely rubber stamped termination decisions.  (Bartlett Dep. at 38-39).  Indeed, Bartlett also stated the Board could ask questions about termination recommendations and supporting investigations.  (Id. at 30-31).  Bartlett even asked District management during one executive session whether employees were being targeted for speaking out.  (Id. at 35).  Bartlett recalls the Board inquiring into the cause of the accident that led to Rolland's termination, but does not remember the result of the inquiry.  (Bartlett Dep. at 44).  Board member Cash does not recall discussing the Plaintiff's termination but stated that, even though she could not recall them, there would have been specific reasons supporting a termination decision. (Cash Dep. at 57-58).  Additionally, the Defendant has shown that the Board has rejected termination recommendations in the past.  (See Adams Dep. at 37-38).  In sum, the Plaintiff has not established that there was a custom or practice by which the Board failed to conduct meaningful review of termination recommendations or that

the Board tacitly approved the unconstitutional actions of subordinate employees.  See Brooks, 813 F.2d at 1193.  Therefore, retaliatory motivations of others – if they existed – are not attributed to the District and cannot be the basis of section 1983 liability.

Accordingly, the Plaintiff must show that a majority of the Board approved her termination in retaliation for protected speech.  The only speech that she relies upon are her statements at the scene of the September 28 accident.  She does not claim that she made any statements to the media or spoke at any public meetings about the accident or anything else.  The Plaintiff has not produced any evidence that the Board had a policy of retaliating against employees who spoke to police officers investigating accidents involving school buses.  Indeed, district policy *required* employees to cooperate in the investigation of accidents.  "Even in the absence of an express policy or custom, a local government body can be held liable 'for a single act or decision of a policymaking authority in the area of the act or decision.'"  Cuesta v. School Board of Miami-Dade County, Fla., 285 F.3d 962, 968 (11th Cir. 2002) (quoting McMillian v. Johnson, 88 F.3d 1573, 1577 (11th Cir. 1996)).  "A policymaker's approval of an unconstitutional action can constitute unconstitutional [] policy only when the policymaker approves a subordinate's decision *and the basis for it*."  Matthews v. Columbia County, 294 F.3d 1294, 1297-98 (11th Cir. 2002)

(quoting <u>Gattis v. Brice</u>, 136 F.3d 724, 727 (11th Cir. 1998)).  Here, as the above evidence shows, the Board took explicit steps to satisfy itself that reprisal for public speaking was *not* the basis for the recommendations to terminate Rolland.  Board member Abraham testified that many Board members were concerned about retaliation and had made inquiries to ensure that employees were not being retaliated against. (Abraham Dep. at 40-42).  Board member Bartlett recalls the Board inquiring into the cause of the accident that led to Rolland's termination, but does not remember the result of the inquiry.  (Bartlett Dep. at 44).  There is no indication that any Board member condoned terminating Rolland for her alleged protected activity.

In <u>Matthews</u>, the county defendant appealed following a jury verdict in favor of the plaintiff on section 1983 liability.  The jury's special verdict concluded that one commissioner on the county's board of commissioners was motivated by the plaintiff's protected speech activity in approving the determination to terminate the plaintiff as part of a broad reduction in force.  The verdict further found that two other commissioners on the five commissioner board were influenced by the first commissioner's improper motivation.   Only these three of the five total commissioners voted to terminate the plaintiff.  On appeal, the court reversed the trial court's denial of a judgment as a matter of law for the defendant following the jury verdict.   The court concluded that the facts did not establish municipal liability

through a delegation or ratification theory.  With respect to a ratification theory, the court held that "[c]ounty liability on the basis of ratification exists when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority."  Id. at 1297 (quoting Bannum, Inc. v. City of Fort Lauderdale, 901 F.2d 989, 998 (11th Cir. 1990)).  The court concluded that the fact that two of the commissioners may have known about or been influenced by the third commissioners unconstitutional motivations was insufficient itself to support a ratification theory.  The court reasoned that such a rule would hamper lawmakers who are aware of unconstitutional animus behind legislation but who nevertheless support the legislation on other grounds. "Because only [one commissioner] was actually motivated by unconstitutional consideration, the County cannot be held liable under Section 1983."  Id. at 1298 (quoting Mason v. Village of El Portal, 240 F.3d 1337, 1340 (11th Cir. 2001)).

Here, in contrast, the evidence does not show that any Board member was motivated to terminate Rolland for any protected activity.  Indeed, many Board members were not aware of Rolland's statements about her accident when they voted to terminate her; many had not even heard of Rolland.  (See Morgan Dep. at 25; Crooks Dep. at 61; Cash Dep. at 51; Banks Dep. at 18; Crowder-Eagle Dep. at 69-71; Abraham Dep. at 69-71).  Further, the deposition testimony of several Board members

shows that the Board took steps to ensure it was satisfied there were sufficient grounds for termination.  (See Bartlett Dep. at 44; Abraham Dep. at 40-42).  Under Matthews, even if a Board member admitted that he or she was motivated to terminate Smith because of her protected activity, section 1983 liability will still not attach to CCSD unless additional Board members shared that animus.  See also Mason, 240 F.3d at 1340 (regarding the plaintiff's section 1983 retaliation claim, "there can be no municipal liability unless all three members of the council who voted against reappointing Plaintiff shared the illegal motive.").  The evidence does not show that a single Board member was motivated to terminate the Plaintiff due to her protected statements.

Indeed, the human resources report given to the Board provided multiple grounds for the Plaintiff's termination.  The report points to a preventable accident on September 28, 2009, when the Plaintiff's bus hit a fence and a tree and one student was sent to the hospital with a shoulder injury.  (Cash Dep. Ex. 5, at 5).  She was suspended for one day following that accident.  (Id.)  The report states that the Plaintiff failed to properly report a collision on September 25, 2009, and its resulting damage, and that the accident was not discovered until an October 6, 2009, meeting regarding the September 28 accident.  (Id.)  Upon investigation, human resources determined based on video tape evidence that the Plaintiff was using a handheld

electronic device against District policy when the September 25, 2009, accident occurred.  (Id. at 6).  Based on the deposition testimony and this report, there is no indication that any Board member was motivated to terminate the Plaintiff for the statement she made to a police officer following the September 28, 2009, accident. As noted, there is no indication that the majority of the Board was even aware of the Plaintiff's statement when it voted to approve her termination.  (See Morgan Dep. at 25; Crooks Dep. at 61; Cash Dep. at 51; Banks Dep. at 18; Crowder-Eagle Dep. at 69-71; Abraham Dep. at 69-71).  Accordingly, the Plaintiff cannot establish municipal liability and the Defendant's motion for summary judgment should be granted.

B.     The Plaintiff's Protected Activity

Even if municipal liability did attach to the Board in this instance, the Plaintiff has not presented enough evidence to defeat the Defendant's Mt. Healthy defense.  In general,

> [f]or a public employee to sustain a claim of retaliation for protected speech under the First Amendment, the employee must show by a preponderance of the evidence these things: (1) the employee's speech is on a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee. Once the employee succeeds in showing the preceding factors, the burden then shifts to the employer to show, by a preponderance of the evidence, that "it would have reached the same decision ... even in the absence of the protected conduct."

Battle v. Board of Regents for Georgia, 468 F.3d 755, 759-60 (11th Cir. 2006) (citing Anderson v. Burke County, Georgia, 239 F.3d 1216, 1219 (11th Cir. 2001)).  "In cases where a plaintiff has shown a public employer acted under both lawful and unlawful motives, the public employer cannot be liable if the evidence shows the public employer would have arrived at the same employment decision even in the absence of the allegedly protected activity."  Boldin v. Limestone County, 152 Fed. Appx. 841, 846 (11th Cir. 2005) (citing Mt. Healthy, 429 U.S. at 287).   Further, "[t]he Supreme Court has made clear that even if the Defendant's animosity toward the [plaintiff's protected activity] played a 'substantial part' in the [Plaintiff's termination decision], such animosity cannot salvage the job of an employee who could have been fired anyway."  Douglas v. DeKalb County, Georgia, No. 1:06-cv-0584-TWT, 2007 WL 4373970, at *4 (N.D. Ga. Dec. 11, 2007) (citing Mt. Healthy v. Doyle, 429 U.S. 274, 286 (1977)).  The Plaintiff "may not use [her protected] activities to provide a cloak of immunity" for poor job performance.  Id. at *3.  Accordingly, "[w]ading through the muck of swirling allegations is unnecessary, as the Defendant[] need only advance one reason as to why [it was] justified in terminating the Plaintiff."  Id. at *4 (citing Mt. Healthy, 429 U.S. at 286); see also Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001) ("In … § 1983 lawsuits, the Supreme Court has recognized that an employer can avoid liability if it

can prove that it would have made the same disputed employment decision in the absence of the alleged bias.").

Here, assuming that the Plaintiff did in fact engage in protected conduct, the Defendant has provided numerous reasons for her termination sufficient to satisfy the Mt. Healthy standard.  As noted above, the human resources report given to the Board provided multiple grounds for the Plaintiff's termination.  The report points to a preventable accident on September 28, 2009, when the Plaintiff's bus hit a fence and a tree and one student was sent to the hospital with a shoulder injury.  (Cash Dep. Ex. 5, at 5).  The Plaintiff was suspended for one day following that accident.  (Id.)  The report states that the Plaintiff failed to properly report a collision on September 25, 2009, and its resulting damage, and that the accident was not discovered until an October 6, 2009, meeting regarding the September 28 accident.  (Id.)  Upon investigation, human resources determined based on video tape evidence that the Plaintiff had been using a handheld electronic device against District policy when the September 25, 2009, accident occurred.  (Id. at 6).  The Plaintiff contends the progressive discipline policy does not allow for termination after a single preventable accident, such as the September 28 accident.  However, the administrative rules contained in the 2009-2010 handbook specifically state that the District may terminate

an employee who has a preventable accident.  (Dunnigan Dep. Ex. 31, at 2, § 3, ¶¶ a & b).

Even if the Plaintiff had shown that the recommendation for her termination was based in part on unconstitutional motives, the Defendant has provided evidence to show that, based on her job performance history, the Plaintiff would have been terminated anyway.  See Douglas, 2007 WL 4373970, at *4 (noting that Mt. Healthy cautions against elevating employees to a better position than they would have been in "simply because they engaged in constitutionally protected conduct"); Mt. Healthy, 429 U.S. at 286 ("A borderline or marginal candidate… ought not to be able, by engaging in [protected conduct], to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.").  Accordingly, the Defendant's motion for summary judgment should be granted. [2]

## IV.  Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 123] is GRANTED.

---

[2] Because the Court concludes that the Plaintiff cannot establish municipal liability and cannot overcome the Defendant's Mt. Healthy argument, the Court need not address whether the Plaintiff's statement following the September 28, 2009, accident was protected conduct.

SO ORDERED, this 7 day of August, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge